IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE SHAYA,                         :          CIVIL ACTION
                                      :
          Plaintiff,                  :          NO. 10-2670
                                      :
     v.                               :
                                      :
WARMINSTER TOWNSHIP, et al.,          :
                                      :
          Defendants.                 :

**Jones, II, J.**                                              **July 31, 2012**

**MEMORANDUM**

Plaintiff George Shaya ("Plaintiff") pursues a Complaint against Warminster Township

and Corporal Casey E. Byrne[1] (together, "Defendants") for alleged violations of Plaintiff's

Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983, as well as for common-law

false arrest and false imprisonment.

Cogently stated, pursuant to judicial warrant, Corporal Byrne arrested Plaintiff on state

felony theft charges.  Plaintiff was the manager of an automobile shop, and the charges arose as a

result of Plaintiff's refusal to release a customer's automobile due to the customer's failure to pay

for parts and service related to a repair.  Currently before the Court are Defendants' Motion for

Summary Judgment (Dkt. No. 22) ("Motion")[2] and Statement of Undisputed Facts (Dkt. No. 23)

---

[1]Corporal Byrne is a police officer with the Warminster Township Police Department
("WPD").

[2]On April 12, 2011, the Honorable John P. Fullam denied Defendants' Motion to Dismiss
Plaintiff's Amended Complaint "without prejudice to the filing of a motion for summary
judgment at the appropriate time."  Dkt. No. 10.  The matter was then transferred to my docket

("SUF"), as well as Plaintiff's response (Dkt. No. 24) ("Opp.").[3]  For the reasons set forth below,

Defendants' Motion will be GRANTED.

## I.      BACKGROUND

On July 11, 2007, customer Joseph Whelan's car was towed to Sam's Auto Repair in

Warminster, Pennsylvania for repairs.  SUF ¶ 3 (citing Am. Compl. ¶ 6).  On August 3, 2007,

Plaintiff, who is the manager at Sam's, approximated the cost at about $4,000.  SUF ¶¶ 2, 3

(citing Am. Compl. ¶¶ 3, 6, 7, 11).  About two months later, Sam's completed the repairs and

billed Mr. Whelan for approximately $5,000 worth of parts and service.  SUF ¶ 4 (citing Am.

Compl. ¶ 11).  Mr. Whelan refused to pay, and as a result Sam's began adding storage charges of

about $40 per day.  Am. Compl. ¶ 12; SUF ¶¶ 5-6 (citing Am. Compl. ¶ 11); SUF ¶¶ 21-22, 26-

27; Ex. C to SUF (Deposition of Plaintiff George Shaya ("Pl. Dep.")) at 45.

On May 29, 2008, Sam's notified Mr. Whelan that it intended to execute on its common

law lien rights and liquidate the vehicle.  Am. Compl. ¶ 13.  About a week later, Mr. Whelan

reported to the WPD that his car had been stolen.  SUF ¶ 9 (citing Am. Compl. ¶ 14).[4]  When

Corporal Byrne called Plaintiff to investigate, Plaintiff informed him that Plaintiff and Mr.

---

on April 21, 2011.  Dkt. No. 11.  Defendants filed their summary judgment motion on February 14, 2012.

[3]To the extent he even raises objections, Plaintiff's submissions regarding competing versions of disputed or undisputed facts does not comply with Chambers' procedures. Regardless, while Plaintiff suggests disagreement with Defendants over the propriety of the fees allegedly charged to Mr. Whelan (the automobile owner), Plaintiff himself states that he "generally agrees with defendants' recitation of the facts."  Opp. at 1.

[4]At the time Mr. Whelan provided proof of vehicle ownership to Corporal Byrne, Plaintiff had not yet secured judgment on a lien pursuant to Pennsylvania law.  SUF ¶ 45 (citing Pl. Dep. at 17).  Plaintiff failed to serve Mr. Whelan with copies of the invoice, as required to commence a lien action, until June 12, 2008.  SUF ¶ 24 (citing Pl. Dep. at 45, 47).

Whelan were already engaged in ongoing civil litigation relating to the repairs and storage fees, and that Plaintiff would not return the vehicle unless he received payment for the parts and service.  SUF ¶ 10 (citing Am. Compl. ¶ 16); Am. Comp. ¶ 15.  Corporal Byrne then contacted Bucks County Assistant District Attorney ("ADA") Daniel J. O'Riordan on at least three occasions to discuss possible criminal charges; the ADA ultimately recommended three felony counts, partly in light of the "exorbitant rates for storage" being charged by Plaintiff, without Mr. Whelan's agreement.  SUF ¶ 27 (citing Pl. Dep. at 76); SUF ¶ 49 (citing Deposition of Defendant Casey E. Byrne ("Byrne Dep." at 19); SUF ¶ 52 (citing Byrne Dep. at 63); SUF ¶ 70 (quoting Ex. F to SUF (Deposition of ADA Daniel O'Riordan) at 12-14; SUF ¶ 74 (citing Byrne Dep. at 18). Corporal Byrne contacted Plaintiff again, informing Plaintiff that the appropriate recourse would be for Plaintiff to return the vehicle to Mr. Whelan and seek civil damages.  SUF ¶ 50 (citing Byrne Dep. at 28-29).  Corporal Byrne warned Plaintiff of the potential for his arrest, should he fail to return the car, five to eight times during their telephone conversation; Plaintiff replied that he was "willing to go to jail for his...principles."  SUF ¶ 29 (citing Pl. Dep. at 88); SUF ¶ 55 (quoting Pl. Dep. at 35).

On June 12, 2008, Corporal Byrne filed an Affidavit of Probable Cause and Criminal Complaint, setting forth the foregoing, with Bucks County District Justice Daniel Finello, who issued said complaint.  Am. Compl. ¶ 17.[5]  Corporal Byrne and other members of the WPD arrived at Sam's and handcuffed, patted down, and placed Plaintiff in a police car.  SUF ¶¶ 34-35 (citing Pl. Dep. at 112, 115); SUF ¶ 54 (citing Byrne Dep. at 77).  Plaintiff was taken to the WPD

---

[5]Notably, Plaintiff admits that the information contained in Corporal Byrne's Affidavit is accurate.  *See* Pl. Dep. at 135.

headquarters to be fingerprinted, then Corporal Byrne transported him to the District Justice's

chambers in Bensalem.  SUF ¶ 58 (citing Byrne Dep. at 80-81); Am. Compl. ¶ 21.  At his

arraignment, the judge asked to speak with Corporal Byrne, inquiring as to whether he had

provided Plaintiff the opportunity to return Mr. Whelan's vehicle rather than face arrest;

Corporal Byrne confirmed that he had done so.  SUF ¶¶ 60-63 (citing Byrne Dep. at 83-84).  The

judge then set bail; as he was not immediately able to post said bail, Plaintiff was temporarily

detained in Bucks County Prison.  SUF ¶¶ 65-66 (citing Byrne Dep. at 85-86, 88); Am. Compl. ¶

21.  Subsequently, a different District Justice dismissed all charges against Plaintiff at a

preliminary hearing.  Am. Compl. ¶ 22.

## III.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); Fed. R. Civ. P. 56(c).  In order to defeat a motion for summary judgment, disputes must

be both (1) material, meaning concerning facts that will affect the outcome of the issue under

substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could

return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.  An issue is genuine if the fact

finder could reasonably return a verdict in favor of the non-moving party with respect to that

issue. *Anderson*, 477 U.S. at 248.  In reviewing a motion for summary judgment, the court does

not make credibility determinations and must view facts and inferences in the light most

favorable to the party opposing the motion.  *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54

F.3d 1125, 1127 (3d Cir. 1995).

## IV.   DISCUSSION

### A.   Section 1983 Claim

In Count One of the Amended Complaint, Plaintiff seeks compensatory and punitive

damages in connection with his arrest, contending that Corporal Byrne violated his constitutional

rights by (1) depriving him of physical liberty; and (2) subjecting him to an unreasonable search

and seizure.[6]  To establish a *prima facie* claim under Section 1983, a plaintiff must demonstrate

that Corporal Byrne's actions deprived him of a constitutional right, and that the deprivation

occurred under color of state law.  *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d. Cir. 1996).

Here, Plaintiff claims that Corporal Byrne violated his Fourth and Fourteenth Amendment rights

by arresting him and detaining him without probable cause.  Because Byrne acted in his official

---

[6]In his Amended Complaint, Plaintiff alleged that Corporal Byrne employed "unnecessary and excessive force" in arresting Plaintiff, but later conceded this claim: "Plaintiff will not belabor certain issues and will not pursue the excess[ive] force or assault and battery claim against Officer Byrne." Opp. at 6.  In any event, Plaintiff's handcuffing was the extent of the excessive force claim that he outlined against Corporal Byrne.  *See* Pl. Dep. at 121.  In addition, "[a]s to the *Monell* claim [alleging the WPD's policy and/or practice of constitutional violations], Plaintiff will not purs[u]e that matter."  Opp. at 6 (indicating that Plaintiff previously withdrew its claim against the WPD as an agency of Warminster Township by amending his Complaint accordingly).  Accordingly, the Court considers Counts Two and Four of the Amended Complaint to be withdrawn and addresses only Defendants' arguments relating to Counts One and Three.

capacity as a police officer, he was operating under color of state law when he arrested Plaintiff

and thus, the only issue is whether he deprived Plaintiff of a constitutional right.[7]

### i.      Fourteenth Amendment–Property Seizure

When a plaintiff seeks the return of property lawfully seized but no longer needed for

police investigation or criminal prosecution, the claim is properly advanced under the due

process clause of the Fourteenth Amendment.  *City of West Covina v. Perkins*, 525 U.S. 234,

236 (1999).  Thus, to the extent that Plaintiff argues that the police seizure of Mr. Whelan's car

violated his procedural due process rights, he must prove that he took advantage of the processes

available to him, or that such processes were "unavailable or patently inadequate."  *Alvin v.*

*Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  In Pennsylvania, one may move for the return of

property "on the ground that he or she is *entitled to lawful possession thereof.*"  Pa. R. Crim. P.

588(a) (emphasis added).  Here, where Joseph Whelan–not Plaintiff–owns the vehicle in

question, and the record indicates that Plaintiff never instituted a lien action, any procedural due

process claim must fail as a matter of law.[8]

### ii.      Fourth Amendment–Personal Seizure

In addition to his claim relating to the police seizure of Mr. Whelan's vehicle, Plaintiff

argues that he was subjected to malicious prosecution arising from his arrest and appearance

---

[7]Punitive damages are not available.  *See Turner v. City of Phila.*, 22 F. Supp. 2d 434, 440 (E.D. Pa. 1998) (punitive damages not available against municipality or individuals acting in their official capacity for violations of Section 1983).

[8]Aside from the seizure of the vehicle, an arrestee's incarceration itself does not violate his substantive due process rights pursuant to the Fourteenth Amendment, even where probable cause is later invalidated.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Thus, Plaintiff may only raise a substantive due process claim under the Fourth Amendment, *id.* at 272, which the Court addresses in the next section of its opinion.

before the District Justice.  To make out a Section 1983 claim of malicious prosecution under the

Fourth Amendment, a plaintiff must prove that: "(1) the defendants initiated a criminal

proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was

initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than

bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent

with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of*

*Beachwood*, 407 F.3d 599, 601 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497,

521 (3d Cir. 2003)).  Plaintiff has satisfied the first two criteria; he may well satisfy the fifth.  *See*

*Gallo v. City of Phila.*, 161 F.3d 217, 225 (3d Cir. 1998) (plaintiff was indeed "seized" where he

was arrested, compelled to post bail, restricted from traveling out of state, and required to attend

court hearings).  However, he cannot establish the third or fourth factor.

Probable cause is a "fluid concept turning on the assessment of probabilities and

particular factual context, not readily, or even usually, reduced to a neat set of legal rules."

*Illinois v. Gates*, 462 U.S. 213, 232 (1983).  Such a determination does "not require the fine

resolution of conflicting evidence that a reasonable doubt, or even a preponderance standard,

demands."  *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975).  Indeed, probable cause exists when a

police officer has "reasonably trustworthy information" to "warrant a man of reasonable caution"

to suspect that the accused had committed a crime.  *Renk v. City of Pittsburgh*, 537 Pa. 68, 76

(1994) (quoting *Commonwealth v. Rodriguez*, 526 Pa. 268, 273 (1991)); *see also Paff v.*

*Kaltenbach*, 204 F.3d 425, 433 (3d Cir. 2000) (considering whether reasonable law enforcement

officer in like situation could have believed conduct was legal).  Here, Corporal Byrne contacted

Plaintiff for his side of the story several times over the course of his investigation, consulted the

Bucks County ADA on at least three occasions, and warned Plaintiff numerous times about his potential arrest should he fail to release Mr. Whelan's vehicle.  When Plaintiff declined to comply, Corporal Byrne filed an affidavit with the District Justice, who reviewed the facts and issued the complaint.  Indeed, Plaintiff has conceded that the information contained in the affidavit of probable cause is accurate.  While existence of probable cause in a Section 1983 action is typically a fact question, it may exist as a matter of law "if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (affirming summary judgment for police department on grounds that probable cause existed for search of premises, even where initial affidavit included false information, where district court considered affidavit rewritten for misrepresentations and omissions).  Given the loosely-defined, deferential standard for establishing probable cause, Corporal Byrne's course of action strikes this Court as eminently reasonable.

Even if the Court were to determine that issues of material fact remained as to probable cause, Plaintiff still has not satisfied the fifth element by showing that Corporal Byrne acted maliciously, or otherwise acted with "reckless and oppressive disregard" of Plaintiff's rights. *Lippay v. Christos*, 996 F.2d 1490, 1503 (3d Cir. 1993).  According to the Amended Complaint, Corporal Byrne contacted Plaintiff, who informed Corporal Byrne of the nature of his dispute with the Whelans.  Only in his opposition to Defendants' Motion does Plaintiff contend that Corporal Byrne was "hostile" during the phone call and "demanded" the return of the vehicle. Opp. at 1.  Plaintiff provides no citations to any evidentiary support for these allegations.  Even if these characterizations were accurate, such conduct would not reach the threshold required to

establish Corporal Byrne's disregard or indifference to Plaintiff's life or to the safety of others.

*See Simmons v. Phila.*, 947 F.2d 1042, 1091 (3d Cir. 1991) (defining "recklessness") (quoting

BLACK'S LAW DICTIONARY 1142-43 (5th edl. 1979)). Accordingly, Plaintiff's Section 1983 claim

under the Fourth Amendment fails as a matter of law on this front as well. *See Donohue v.*

*Rineer*, No. 11-3425, 2012 WL 2384249, at *1 (3d Cir. June 26, 2012) (affirming summary

judgment "[b]ecause the lack of evidence showing malicious intent is an adequate and

independent ground for the District Court's judgment"). Defendants are therefore entitled to

summary judgment on Count One.[9]

###### B. False Arrest and Illegal Imprisonment

Pursuant to statute, if at any time before trial a District Court has dismissed all claims

over which it has original subject matter jurisdiction, the Court may, in its discretion, decline to

exercise supplemental jurisdiction over remaining supplemental state law claims. 28 U.S.C.

1367(c); *Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec.,*

*Inc.*, 823 F.Supp. 1191 (E.D. Pa. 1993). Here, in addition to his Section 1983 claim, Plaintiff

brings a pendant state law claim for false arrest and illegal imprisonment. Given that I have

---

[9]Defendants also argue that Corporal Byrne is entitled to qualified immunity from Plaintiff's claims under Section 1983. *See* Motion at 16-19. An official's entitlement to qualified immunity rests on two inquiries: "(1) whether the facts alleged establish a violation of a constitutional right, and (2) whether the constitutional right at issue was clearly established." *Hopkins v. Vaughn*, 363 Fed. App'x 931, 935 (3d Cir. 2010). While these questions might have been addressed most efficiently at the motion to dismiss stage, this Court finds that Plaintiff has failed to allege a violation of a constitutional right as a matter of law, and thus the Court need not pursue any further analysis as to the applicability of qualified immunity. *See Constitutional Guided Walking Tours, LLC v. Independence Visitor Center Corp.*, 804 F. Supp. 2d 320, 338 (E.D. Pa. 2011). Even if Plaintiff did demonstrate the violation of his constitutional rights, he has failed to demonstrate that any such right was clearly established and that Corporal Byrne knew his conduct was unlawful. *See id.* at n.20.

resolved the federal claim prior to trial, I will dismiss the remaining supplemental state law claim

(Count Three) without prejudice.[10]

An appropriate Order follows.

---

[10] 28 U.S.C. § 1367 tolls the statute of limitations over supplemental claims following dismissal of all federal claims under Section 1367(c), so that a federal court's decision to decline to exercise supplemental jurisdiction does not prejudice a plaintiff regarding timing of his pendant claims.  Specifically, the statute of limitations for supplemental claims is tolled for the entire period a plaintiff's state law claims were pending in federal court plus a period of 30 days following dismissal, unless state law provides for a longer tolling period.  28 U.S.C. 1367(d).